**1722-CC11044**

Electronically Filed - City of St. Louis - August 17, 2017 - 04:29 PM

## IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
## STATE OF MISSOURI

| | | |
|---|---|---|
| LINDA HUGHES, as Mother of Decedent, NATHAN HUGHES | ) ) ) | |
| Plaintiff, | ) ) | Cause No.: |
| v. | ) ) | Div: 1 |
| MALLINCKRODT BRAND PHARMACEUTICALS, INC.; KVK-TECH, INC.; IMPAX LABORATORIES, INC.; ACTAVIS GENERICS; AMNEAL PHARMACEUTICALS OF NEW YORK, LLC; WEST-WARD PHARMACEUTICALS CORP.; PAR PHARMACEUTICAL, INC.; ADVANCED PAIN SPECIALISTS, INC.; COMPREHENSIVE PAIN SPECIALISTS, LLC; And DR. CHRISTOPHER CREIGHTON; | ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

### PETITION

**COMES NOW** Plaintiff Linda Hughes, as Mother of decedent Nathan Hughes,

by and through undersigned counsel, and for her Wrongful Death Petition against

Defendants, alleges and states as follows:

### ALLEGATIONS APPLICABLE TO ALL COUNTS

1.     Plaintiff Linda Hughes is a resident of the City of St. Louis, and is the

mother of Nathan Hughes, an individual who died in the City of St. Louis on July 9,

2016 because of opioid intoxication.

2.     Defendant KVK-Tech, Inc., ("KVK") is a Pennsylvania corporation with its

principal place of business in Pennsylvania. KVK may be served at its corporate

headquarters at 110 Terry Drive, Ste. 200, Newton Pennsylvania.

1

Electronically Filed - City of St. Louis - August 17, 2017 - 04:29 PM

3.    Defendant Impax Laboratories, Inc., ("Impax") is a Delaware corporation with its principal place of business in California Impax may be served through its Registered Agent, The Corporation Trust Company, located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

4.    Defendant Mallinckrodt Brand Pharmaceuticals, Inc., ("Mallinckrodt") is a Delaware corporation with its principal place of business in Missouri Mallinckrodt may be served through its Registered Agent, CT Corporation System, located at 120 South Central Avenue, Suite 400, Clayton, MO.

5.    Defendant Amneal Pharmaceuticals of New York, LLC, ("Amneal") is a Delaware limited liability corporation with its principal place of business in Pennsylvania. Amneal may be served through its Registered Agent, CT Corporation System, located at 111 Eighth Avenue, New York, New York.

6.    Defendant West-Ward Pharmaceuticals Corporation, ("West-Ward") is a Delaware corporation with its principal place of business in New Jersey. West-Ward may be served through its Registered Agent, The Corporation Trust Company, located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

7.    Defendant Actavis Generics ("Actavis") is an Ireland corporation, with its principal place of business in New Jersey.   Actavis may be served through its registered agent at 12747 Olive Blvd. Ste 300, St. Louis, Missouri.

8.    Defendant Par Pharmaceutical, Inc. ("Par") is a New York corporation with its principal place of business in New York. Par may be served through its Registered Agent, CT Corporation System, located at 111 Eighth Avenue, Thirteenth Floor, New York, New York.

Electronically Filed - City of St. Louis - August 17, 2017 - 04:29 PM

9.      Defendants Mallinckrodt, KVK, Impax, Actavis, Amneal, Westward, and Par ("Drug Companies") manufacture, market, and sell pain relieving prescription medications, generally called opiates, to citizens of Missouri.  Defendant Drug Companies are subject to personal jurisdiction in Missouri, because they conduct substantial and continuing business in Missouri, and derive substantial economic profits from Missouri.

10.     Defendant Creighton, M.D. is a medical doctor and pain management physician who held himself out to the public in general, and to Nathan in particular, as a medical provider who was able to provide medical services and treatment to patients such as Nathan. Defendant Creighton worked for Defendants APS and CPS.

11.     Defendant Advanced Pain Specialists, Inc. ("APS"), is a Missouri corporation, with its principal place of business in Missouri.  Although it was administratively dissolved, it is a proper party to this case under R.S.Mo. Section 351.476.  At all relevant times, Defendant APS operated as a medical provider, representing and holding itself out to the public, and in particular to Nathan, as a medical provider that was able to render medical services and treatment to patients such as Nathan. APS may be served at the Missouri Secretary of State's Office, 600 W Main Street, Jefferson City, Missouri.

12.     Defendant Comprehensive Pain Specialists, Inc. ("CPS"), is a Tennessee corporation, with its principal place of business in Tennessee. At all relevant times, Defendant CPS operated as a medical provider, representing and holding itself out to the public, and in particular to Nathan, as a medical provider that was able to render medical services and treatment to patients such as Nathan. CPS may be served through

Electronically Filed - City of St. Louis - August 17, 2017 - 04:29 PM

its Registered Agent, National Registered Agents, Inc., located at 800 South Gay Street, Ste. 2021, Knoxville, Tennessee.

13.    Prior to his death, twenty-four year old Nathan Hughes worked in a warehouse as a forklift operator.

14.    In 2013, Nathan injured his back at work, which included herniating an intervertebral disc. This caused him chronic pain. He received physical therapy and pain management.

15.    Nathan later re-injured his back in July of 2014 while lifting a box at work.

16.    After these injuries and before his death, Defendant Creighton treated Nathan for his chronic pain and prescribed him opioid pain medications manufactured by Defendant Drug Companies, including Oxycodone Hydrochloride (manufactured by Defendant KVK), Oxymorphone Hydrochloride (manufactured by Defendants KVK and Impax), Hydromorphone Hydrochloride (manufactured by Defendant Westward), Hydrocodone-Acetaminophen (manufactured by Defendants Mallinckrodt and Actavis), and Oxycodone-Acetaminophen (manufactured by Defendants Amneal and Par).

17.    Defendant Creighton prescribed excessive doses and quantities of opiate pain medication to Nathan between 2014-2016. This prolonged treatment of large quantities of opiate medication caused Nathan's addiction and death by opiate intoxication.

18.    Oxycodone Hydrochloride, Oxycodone-Acetaminophen, Hydromorphone, and Oxymorphone are opiate-based pain-relievers and are classified by the United States Drug Enforcement Administration as schedule II controlled substances with a high risk of addiction, dependence, and abuse.

Electronically Filed - City of St. Louis - August 17, 2017 - 04:29 PM

19.     Hydrocodone-Acetaminophen is an opiate-based, synthetic, narcotic pain reliever and is classified by the United States Drug Enforcement Administration as a schedule III controlled substance with a high risk of addiction, dependence, and abuse.

20.     Defendant Creighton treated Nathan through his practice at defendant APS until he sold his practice to defendant CPS in 2015.

21.     Thereafter, Defendant Creighton treated Nathan through Defendant CPS until 2016.

22.     Defendant Creighton regularly prescribed high doses and high quantities of the above listed opiates simultaneously to Nathan as treatment for his spine pain.

23.     Defendant Creighton increased the dosage and quantity of the opiate-based pain-relief medications he prescribed to Nathan over the time Creighton treated Nathan.

24.     Defendant Creighton continued to prescribe the opiate-based pain-relief medications without utilizing any alternative treatments to alleviate Nathan Hughes' spine pain, even though Defendant Creighton knew alternative treatments were available.

25.     During the course of treatment, Nathan became dependent upon and addicted to the opiate-based pain-relief medications prescribed by Defendant Creighton and manufactured by the Defendant Drug Companies named herein.

26.     In June of 2016, Nathan began outpatient rehabilitation treatment for his opioid addiction.  During this treatment, Nathan received counseling, and he was also prescribed methadone to gradually eliminate his dependence on opiates.

Electronically Filed - City of St. Louis - August 17, 2017 - 04:29 PM

27.     Nathan Hughes suffered mental and physical distress, because of this addiction, during his drug rehabilitation program and in his attempts to stop using the opiates made by the Defendant Drug Companies.

28.     On July 9, 2016, Nathan died as a result of an accidental overdose of Fentanyl and Methadone.

29.     Venue is proper in this court pursuant to R.S.Mo § 508.010.

### COUNT I - MEDICAL MALPRACTICE

COMES NOW Plaintiff Linda Hughes, as Mother of decedent Nathan Hughes, by and through undersigned counsel, and for her Medical Malpractice Wrongful Death Petition against Defendant Christopher Creighton, M.D., alleges and states as follows:

30.     Plaintiff adopts and incorporates by reference the above allegations as though fully set forth herein.

31.     During the course of treatment referenced herein, Defendant Creighton committed the following acts of negligence and failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of his profession, in that Creighton:

      a.     Failed to properly evaluate and diagnose Nathan;

      b.     Failed to conduct the proper diagnostic tests and exams;

      c.     Failed to properly treat Nathan Hughes, namely his spine condition and pain;

      d.     Failed to recognize the danger of prescribing high quantities of various opiate-based pain-relief medications over a long period of time;

Electronically Filed - City of St. Louis - August 17, 2017 - 04:29 PM

e.      Failed to prescribe or recommend medical treatment other than opiates;

f.      Failed to properly educate and warn decedent Nathan Hughes of the risk potential of abuse, misuse and addiction with opiates;

g.      Failed to follow known medical guidelines regarding the prescription of opiates;

h.      Prescribed too much opiates or failed to reduce the number of opiated prescribed to Nathan, which led to his death;

i.      Failed to pursue available pain control methods which were less dangerous and addictive;

j.      Failed to recognize, diagnose, and treat Nathan's addiction; and

k.      Failed to properly monitor Nathan's drug use.

32.    Defendant Creighton's negligence and carelessness as set forth above directly caused, or directly contributed to cause, Nathan's addiction to opiates, his pain and suffering, and ultimately his death.

33.    As a direct and proximate result of one, several, or all of the foregoing acts of negligence on the part of Defendant Creighton, Plaintiff claims such damages as the trier of fact may deem fair and just for the death and loss of Nathan Hughes pursuant to R.S.Mo § 537.080 and § 537.090.

**WHEREFORE,** Plaintiff Linda Hughes, as mother of deceased Nathan Hughes requests judgment against Defendant Christopher Creighton, M.D., for a sum in excess of the jurisdictional limits of this Court to fully compensate her and her family for the death and loss of Nathan Hughes pursuant to R.S.Mo § 537.080 and § 537.090, and for any further just and proper relief.

Electronically Filed - City of St. Louis - August 17, 2017 - 04:29 PM

## COUNT II - MEDICAL MALPRACTICE

COMES NOW Plaintiff Linda Hughes, as Mother of decedent Nathan Hughes, by and through undersigned counsel, and for her Medical Malpractice Wrongful Death Petition against Defendants Advanced Pain Specialists and Comprehensive Pain Specialists, alleges and states as follows:

34.    Plaintiff adopts and incorporates by reference the above allegations as though fully set forth herein.

35.    During the course of treating Nathan, Defendants APS and CPS, acting through their agents and employees, committed the following acts of negligence and failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of its profession, and that of its employees and agents:

    a.    Failed to properly evaluate and diagnose Nathan;

    b.    Failed to conduct the proper diagnostic tests and exams;

    c.    Failed to properly treat Nathan Hughes, namely his spine condition and pain;

    d.    Failed to recognize the danger of prescribing high quantities of various opiate-based pain-relief medications over a long period of time;

    e.    Failed to prescribe or recommend medical treatment other than opiates;

    f.    Failed to properly educate and warn decedent Nathan Hughes of the risk potential of abuse, misuse and addiction with opiates;

    g.    Failed to follow known medical guidelines regarding the prescription of opiates;

Electronically Filed - City of St. Louis - August 17, 2017 - 04:29 PM

h.      Prescribed too much opiates or failed to reduce the number of opiated prescribed to Nathan, which led to his death;

i.      Failed to pursue available pain control methods which were less dangerous and addictive;

j.      Failed to recognize, diagnose, and treat Nathan's addiction; and

k.      Failed to properly monitor Nathan's drug use.

36.    Defendant Creighton's negligence and carelessness as set forth above directly caused, or directly contributed to cause, Nathan's addiction to opiates, his pain and suffering, and ultimately his death.

37.    As a direct and proximate result of one, several, or all of the foregoing acts of negligence on the part of Defendant Creighton, Plaintiff claims such damages as the trier of fact may deem fair and just for the death and loss of Nathan Hughes pursuant to R.S.Mo § 537.080 and § 537.090.

**WHEREFORE,** Plaintiff Linda Hughes, as mother of deceased Nathan Hughes requests judgment against Defendant Christopher Creighton, M.D., for a sum in excess of the jurisdictional limits of this Court to fully compensate her and her family for the death and loss of Nathan Hughes pursuant to R.S.Mo § 537.080 and § 537.090, and for any further just and proper relief.

### COUNT III- STRICT PRODUCT LIABILITY

COMES NOW Plaintiff Linda Hughes, as Mother of decedent Nathan Hughes, by and through undersigned counsel, and for her Wrongful Death Petition against Defendant Drug Companies alleges and states as follows:

38.    Plaintiff adopts and incorporates by reference the above allegations as though fully set forth herein.

Electronically Filed - City of St. Louis - August 17, 2017 - 04:29 PM

39.    Defendant Drug Companies designed, fabricated, produced, manufactured, tested, distributed, sold, warranted, advertised, and placed on the market and into the stream of commerce, unreasonably dangerous products, namely Oxycodone, Hydrocodone, Oxycodone Hydrochloride, Oxymorphone Hydrochloride, Hydromorphone Hydrochloride, Oxymorphone, Hydrocodone Acetaminophen, and Oxycodone Acetaminophen (herein after "Opiates").

40.    Defendant Drug Companies did so knowing that their Opiates would reach consumers and users in Missouri, including Nathan Hughes, without substantial change in the condition in which they were sold and that, at the time the Opiates left Defendant Drug Companies control, they were defective and unreasonably dangerous.

41.    A drug manufacturer has to make drugs which are safe for the people taking them, and such drugs must not be unreasonably dangerous or defective.

42.    The Defendants' Opiates were in a defective condition and unreasonably dangerous when the people of Missouri and Nathan put them to a reasonably anticipated us as follows:

      a.    Opiates are highly addictive;

      b.    Opiates are deadly in sufficient amounts;

      c.    Opiates are not appropriate for management of long term chronic pain;

      d.    Longer term Opioid users need higher doses of Opiates to obtain the same level of pain relief;

      e.    Opiates are unsafe if not taken appropriately;

43.    The above described defects and dangerous conditions existed when Defendants sold their Opiates.

Electronically Filed - City of St. Louis - August 17, 2017 - 04:29 PM

44.    Missouri consumers and users, including Nathan, did not know Defendants' Opiates were defective and dangerous.

45.    Nathan Hughes took the Opiates in a manner reasonably anticipated by Defendant Drug Companies.

46.    Defendant Drug Companies failed to warn Opioid users and physicians of the significant risks of addiction, overdose, and death, associated with the ingestion of Opiates for the treatment of chronic, long term pain.

47.    The above described Opiates were used by consumers, and users, including Nathan Hughes, for the purpose for which they were reasonably and foreseeably intended and recommended by Defendant Drug Companies.

48.    The ingestion and use of Defendants' Opiates (as Defendants' intended) have caused injuries and death to Missourians, including Nathan Hughes, which was also likewise reasonably foreseeable.

49.    The defective and unreasonably dangerous condition of the Opiates, as set forth above directly caused, or directly contributed to cause, Nathan's addiction to opiates, his pain and suffering, and ultimately his death.

50.    As a direct and proximate result of one, several, or all of the foregoing acts on the part of Defendant Drug Companies, Plaintiff claims such damages as the trier of fact may deem fair and just for the death and loss of Nathan Hughes pursuant to R.S.Mo § 537.080 and § 537.090.

51.    Other people in Missouri, in addition to Nathan, purchased the same Opiates manufactured by Defendant Drug Companies: which was dangerous when used in a reasonably anticipated manner; which caused them to become addicted to

Electronically Filed - City of St. Louis - August 17, 2017 - 04:29 PM

Defendants' Opiates; which caused them to take too much of the Opiates; and which caused, or contributed to cause, them to die.

52.     Plaintiff requests the court certify this case as a class action for: All people or their representatives or estates who purchased Opiates made by Defendant Drug Companies and whose consumption of opioid Opiates caused, or contributed to cause, their deaths from August 9, 2012 to date.

53.     On information and belief:

a.     the class of Plaintiffs affected by Defendants' dangerous product is so numerous that joinder of all members is impracticable;

b.     There are questions of fact or law common to the class, which predominate over any questions affecting only individual members;

c.     The representative parties will fairly and adequately protect the interest of the class; and

d.     A class action suit is the appropriate method for the fair and efficient adjudication of the controversy.  Rule 52.08.

**WHEREFORE,** Plaintiff Linda Hughes, as mother of deceased Nathan Hughes prays for judgment against Defendant Drug Companies for a sum in excess of the jurisdictional limits of this Court to fully compensate her and her family for the death and loss of Nathan Hughes pursuant to R.S.Mo § 537.080 and § 537.090, certify this case as a class action, appoint Linda Hughes as class representative and authorize her to pursue relief on behalf of the class, and for any further just and proper relief.

Electronically Filed - City of St. Louis - August 17, 2017 - 04:29 PM

## COUNT IV- NEGLIGENCE

COMES NOW Plaintiff Linda Hughes, as Mother of decedent Nathan Hughes, by and through undersigned counsel, and for her Wrongful Death Petition against Defendant Drug Companies, alleges and states as follows:

54.    Plaintiff adopts and incorporates by reference the above allegations as if fully set forth herein.

55.    Defendant Drug Companies designed, fabricated, produced, manufactured, tested, distributed, sold, warranted, advertised, and placed on the market and into the stream of commerce, an unreasonably dangerous product, namely Oxycodone, Hydrocodone, Oxycodone Hydrochloride, Oxymorphone Hydrochloride, Hydromorphone Hydrochloride, Oxymorphone, Hydrocodone Acetaminophen, and Oxycodone Acetaminophen ("Opioids" or "Opiates").

56.    Defendant Drug Companies did so knowing that their Opiates would reach consumers and users in Missouri, including Nathan Hughes, without substantial change in the condition in which they were sold and that, at the time the Opiates left Defendant Drug Companies control, they were defective and unreasonably hazardous.

57.    At the time Defendant Drug Companies sold the drugs in the stream of commerce, Defendants knew of the defective design and condition of the Opiates.

58.    A drug manufacturer has to make drugs which are safe for the people taking them, and such drugs must not be unreasonably dangerous or defective.

59.    If a drug has dangerous properties its manufacturer has to warn users and prescribers of those dangers and how ameliorate them.

Electronically Filed - City of St. Louis - August 17, 2017 - 04:29 PM

60.     The Defendants' Opiates were in a defective condition and unreasonably dangerous when the people of Missouri and Nathan put them to a reasonably anticipated us as follows:

        a.     Opiates are highly addictive;

        b.     Opiates are deadly in sufficient amounts;

        c.     Opiates are not appropriate for management of long term chronic pain;

        d.     Longer term Opioid users need higher doses of Opiates to obtain the same level of pain relief;

        e.     Opiates are unsafe if not taken appropriately;

61.     The above described defects and dangerous conditions existed when Defendants sold their Opiates.

62.     Defendant Drug Companies failed to perform adequate testing concerning the safety of the Opiates, during the Opiates' design, production, and sale to the public and/or knowingly placed the dangerous Opiates into the stream of commerce.

63.     Defendant drug companies failed to use ordinary care to manufacture and design the product to be reasonably safe.

64.     Missouri consumers and users, including Nathan, had no reason to know Defendants' Opiates were defective and dangerous.

65.     Nathan Hughes took the Opiates in a manner reasonably anticipated by Defendant Drug Companies.

66.     Defendant Drug Companies failed to warn Opioid users and physicians of the significant risks of addiction, overdose, and death, associated with the ingestion of Opiates for the treatment of chronic, long term pain.

14

Electronically Filed - City of St. Louis - August 17, 2017 - 04:29 PM

67.    The above described Opiates were used by consumers, and users, including Nathan Hughes, for the purpose for which they were reasonably and foreseeably intended and recommended by Defendant Drug Companies.

68.    The ingestion and use of Defendants' Opiates (as Defendants' intended) have caused injuries and death to Missourians, including Nathan Hughes, which was also likewise reasonably foreseeable.

69.    The defective and unreasonably dangerous condition of the Opiates, as set forth above directly caused, or directly contributed to cause, Nathan's addiction to opiates, his pain and suffering, and ultimately his death.

70.    As a direct and proximate result of one, several, or all of the foregoing acts of negligence on the part of Defendant Drug Companies, Plaintiff claims such damages as the trier of fact may deem fair and just for the death and loss of Nathan Hughes pursuant to R.S.Mo § 537.080 and § 537.090.

71.    Other people in Missouri, in addition to Nathan, purchased the same Opiates manufactured by Defendant Drug Companies: which was dangerous when used in a reasonably anticipated manner; which caused them to become addicted to Defendants' Opiates; which caused them to take too much of the Opiates; and which caused, or contributed to cause, them to die.

72.    Plaintiff requests the court certify this case as a class action for: All people or their representatives or estates who purchased Opiates made by Defendant Drug Companies and whose consumption of opioid Opiates caused, or contributed to cause, their deaths from August 9, 2012 to date.

73.    On information and belief:

Electronically Filed - City of St. Louis - August 17, 2017 - 04:29 PM

a.    the class of Plaintiffs affected by Defendants' dangerous product is so numerous that joinder of all members is impracticable;

b.    There are questions of fact or law common to the class, which predominate over any questions affecting only individual members;

c.    The representative parties will fairly and adequately protect the interest of the class; and

d.    A class action suit is the appropriate method for the fair and efficient adjudication of the controversy.  Rule 52.08.

**WHEREFORE,** Plaintiff Linda Hughes, as mother of deceased Nathan Hughes prays for judgment against Defendant Drug Companies for a sum in excess of the jurisdictional limits of this Court to fully compensate her and her family for the death and loss of Nathan Hughes pursuant to R.S.Mo § 537.080 and § 537.090, certify this case as a class action, appoint Linda Hughes as class representative and authorize her to pursue relief on behalf of the class, and for any further just and proper relief.

## COUNT V- VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT

COMES NOW Plaintiff Linda Hughes, as Mother of decedent Nathan Hughes, by and through undersigned counsel, and for her Wrongful Death Petition against Defendant Drug Companies, alleges and states as follows:

74.    Plaintiff adopts and incorporates by reference the above allegations as if fully set forth herein.

75.    Defendant Drug Companies have employed and used deception in connection with the sale and advertisement of opioid medications in the State of Missouri.

Electronically Filed - City of St. Louis - August 17, 2017 - 04:29 PM

76.     Defendant Drug Companies have falsely marketed their opioid medications to Nathan Hughes and the Missouri public as safe for the treatment of chronic pain.

77.     Defendant Drug Companies engaged in unfair practices in the marketing and sale of opioid medications to Nathan Hughes and other Missouri residents, by concealing, suppressing, or omitting the material fact prolonged use of opioid medications carries an unreasonably high risk of addiction and death.

78.     As a result of Defendant Drug Companies false, deceptive, and unfair practices, Nathan Hughes and Numerous Missouri residents paid for prescription opioid medication relying on the expertise of Defendant Drug Companies

79.     Defendant Drug Companies relied on deception to market and sell opioids to Nathan Hughes and other Missouri residents.

80.     Nathan Hughes and other Missouri residents purchased opioids medications from Defendant Drug Companies for personal use.

81.     As a direct and proximate result of Defendant Drug Companies conduct, Nathan Hughes and other Missouri residents disbursed significant funds for opioid medications produced, marketed, and sold by Defendants and suffered an ascertainable financial loss.

82.     Nathan suffered a further ascertainable financial loss when he was forced to spend money on addiction rehabilitation treatment, including counseling and methadone.

83.     As a direct and proximate result of Defendants' conduct, Nathan became addicted to opioid medications overdosed on those medication, and died.

Electronically Filed - City of St. Louis - August 17, 2017 - 04:29 PM

84.    Other people in Missouri in addition to Nathan purchased opioid medication from Defendant Drug Companies which was dangerous when used in a reasonably anticipated manner and that caused them to become addicted to those pain medications, take too much of the pain medications, and die from a drug overdose.

85.    Plaintiff requests the court certify this case as a class action for:

All people or their representatives or estates who purchased an opioid medications made by Defendant Drug Companies and whose consumption of opioid medications, made by Defendant Drug Companies caused, or contributed to cause, their deaths from August 9, 2012 to date.

86.    On information and belief:

a.    the class of Plaintiffs affected by Defendants' dangerous product is so numerous that joinder of all members is impracticable;

b.    There are questions of fact or law common to the class, which predominate over any questions affecting only individual members;

c.    The representative parties will fairly and adequately protect the interest of the class; and

d.    A class action suit is the appropriate method for the fair and efficient adjudication of the controversy. Rule 52.08.

**WHEREFORE,** Plaintiff Linda Hughes, as mother of deceased Nathan Hughes prays for judgment against Defendant Drug Companies for a sum in excess of the jurisdictional limits of this Court to fully compensate her and her family for the death and loss of Nathan Hughes pursuant to R.S.Mo § 537.080 and § 537.090, certify this case as a class action, appoint Linda Hughes as class representative and authorize her to pursue relief on behalf of the class, and for any further just and proper relief.

Electronically Filed - City of St. Louis - August 17, 2017 - 04:29 PM

## COUNT VI- FRAUDULENT MISREPRESENTATION

COMES NOW Plaintiff Linda Hughes, as Mother of decedent Nathan Hughes, by and through undersigned counsel, and for her Wrongful Death Petition against Defendant Drug Companies, alleges and states as follows:

87.    Plaintiff adopts and incorporates by reference the above allegations as if fully set forth herein.

88.    Defendants have employed and used fraud and fraudulent misrepresentations in connection with the sale and advertisement of opioids in the State of Missouri.  Defendants made the following representations in connection with the advertising and sale of opioids:

      a.   that opioid drugs are safe;

      b.   that the benefits of taking opioid drugs outweigh the risks;

      c.   that the risks of taking opioid drugs are minimal;

      d.   that the risk of addiction, dependence and or overdose from taking opioid drugs is minimal;

      e.   that opioid drugs are appropriate to treat chronic pain;

      f.   that opioids are safe for long-term use;

      g.   that opioid drugs were safe to be used in an unsupervised manner; and

      h.   that opioid drugs were not difficult to stop taking after long-term use;

89.    These representations were material and were known to Defendant Drug Companies to be false and/or Defendant Drug Companies knew that they lacked a reasonable basis for the representations.

Electronically Filed - City of St. Louis - August 17, 2017 - 04:29 PM

90.    Defendants made false representations in connection with the sale of opioids, with the intent and expectation that doctors and consumers would act on the representations and purchase their products.

91.    Nathan Hughes and other Missouri residents were unaware of the truth or falsity of the representations of Defendant Drug Companies, and relied upon Defendant Drug Companies' representations in making their decision to purchase and use said opioid medicines sold by Defendants.

92.    Nathan Hughes and other Missouri residents who purchased and used said opioid medications had a right to rely upon the representations of Defendant Drug Companies.

93.    As a direct and proximate result of Defendant Drug Companies' conduct, Nathan Hughes became addicted to opiate medicines and died from an overdose of Defendants' products.

94.    Prior to his tragic death, Nathan Hughes and other Missouri residents like him, disbursed significant funds for opioid medications produced, marketed, and sold by Defendants and sustained injuries.

95.    In addition, Nathan Hughes, and many other Missourians paid for rehabilitation counseling, and methadone prescriptions, in their efforts to withdraw from opioid addiction.  Hughes and other opioid addicted Missourians would otherwise not have paid for these medications and services but for Defendants' conduct.

96.    Other people in Missouri in addition to Nathan purchased opioid medication from Defendant Drug Companies which was dangerous when used in a reasonably anticipated manner and that caused them to become addicted to those pain medications, take too much of the pain medications, and die from a drug overdose.

97.     Plaintiff requests the court certify this case as a class action for:

All people or their representatives or estates who purchased an opioid medications

made by Defendant Drug Companies and whose consumption of opioid medications,

made by Defendant Drug Companies caused, or contributed to cause, their deaths from

August 9, 2012 to date.

98.     On information and belief:

a.     the class of Plaintiffs affected by Defendants' dangerous product is so numerous that joinder of all members is impracticable;

b.     There are questions of fact or law common to the class, which predominate over any questions affecting only individual members;

c.     The representative parties will fairly and adequately protect the interest of the class; and

d.     A class action suit is the appropriate method for the fair and efficient adjudication of the controversy.  Rule 52.08.

**WHEREFORE,** Plaintiff Linda Hughes, as mother of deceased Nathan Hughes

prays for judgment against Defendants for a sum in excess of the jurisdictional limits of

this Court to fully compensate her and her family for the death and loss of Nathan

Hughes pursuant to R.S.Mo § 537.080 and § 537.090, certify this case as a class action,

appoint Linda Hughes as class representative and authorize her to pursue relief on

behalf of the class, and for any further just and proper relief.

Respectfully submitted,

**Burger Law, LLC**

Gary K. Burger, #43478

21

Electronically Filed - City of St. Louis - August 17, 2017 - 04:29 PM

Electronically Filed - City of St. Louis - August 17, 2017 - 04:29 PM

500 N. Broadway, Suite 1350
St. Louis, Missouri 63102
Telephone:  (314) 542-2222
Facsimile:   (314) 542-2229
*gary@burgerlaw.com*
*Attorney for Plaintiff*